UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROGER CLEO MARTIN,

                    Petitioner,                  Case No. 1:17-cv-921

v.                                        Honorable Janet T. Neff

JOE HOLINGSHED,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a Michigan parolee under 28 U.S.C. § 2254. Petitioner pleaded no contest in the Osceola County Circuit Court to a probation violation arising out of a 2013 conviction for third-offense operating while intoxicated, Mich. Comp. Laws § 257.625(6)(d). He also pleaded no contest to new charges of possession of marijuana, second offense, Mich. Comp. Laws §§ 333.7403(2)(d), § 333.7413(2), and operating a drug house, Mich. Comp. Laws § 333.7405(d). On November 20, 2015, the court sentenced Petitioner on the 2015 convictions to two concurrent prison terms of 366 days to 2 years, with 35 days' jail credit toward each. On the probation violation arising out of the 2013 case, the court imposed the same minimum sentence, also to run concurrently with the 2015 sentences.

On October 17, 2017, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner signed his application on October 17, 2017. (Pet., ECF No. 1, PageID.8.) The petition was received by the Court on October 20, 2017. For purposes of this Report and Recommendation, I have given

Petitioner the benefit of the earliest possible filing date.  *See Brand v. Motley*, 526 F.3d 921, 925

(6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit

law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1

(6th Cir. 2006)).

The petition raises three grounds for relief, as follows:

I.    VIOLATION OF DUE PROCESS [–] RADICAL DEFECT IN
      JURISDICTION[.]

II.   ILLEGAL SEARCH AND SEIZURE [–] arrested at home without a
      warrant[.]

III.  INEFFECTIVE ASSISTANCE OF COUNSEL – did nothing but insist I
      take their "great plea bargain." They lied to me.  [1] Both counsels ignored
      and withheld crucial exculpatory evidence from the court.  [2] Counsel did
      not inform me of this evidence (defective search warrant).  [3] Counsel did
      not file any motions to suppress evidence, on violations of due process, and
      medical marijuana card, or request evidentiary hearing.  [4] Counsel stated
      with witness "they can't convict me of running a drug house," yet insisted
      I needed to take the great plea bargain.  [5] Plea bargain was illusory,
      counsel lied to me.

(Pet., ECF No. 1, PageID.6-7.)  Respondent has filed an answer to the petition (ECF No. 10) stating

that the grounds should be denied because they are either noncognizable or without merit.  Upon

review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996,

Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are noncognizable and/or

meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Background

While on probation from a 2013 conviction for third-offense drunk driving,

Petitioner was discovered to have marijuana and marijuana paraphernalia in various parts of his

home.  Petitioner was charged in a new case (Case number 15-4992), with a controlled-substance

violation, maintaining a drug house (second offense), possession of marijuana (second offense),

2

and being a third-offense habitual offender.  In the case for which he was on probation (Case number 13-4720), Petitioner was charged with violating his probation.

Petitioner was offered a plea deal, under which he would plead no-contest to one count of maintaining a drug house and one count of possession of marijuana (second offense). Acceptance of the plea and convictions on the 2015 offenses would provide the factual predicate for the probation violation.  In exchange, the prosecutor agreed to dismiss the remaining charge, to dismiss the second-drug-offense enhancement on the charge of maintaining a drug house, and to dismiss the third-offense habitual offender notice. In addition, the prosecutor agreed that the sentence imposed for the new conviction would run concurrently and not exceed the sentence imposed for the probation violation.  (Adjourned Plea Tr., ECF No. 11-8, PageID.374, 376-377.) Petitioner attempted to enter a plea on September 11, 2015.  However, Petitioner expressed reluctance to enter the plea and indicated that he felt he was being forced to do so.  (*Id.*, PageID.375, 378-379.)  Because the court was concerned that Petitioner was not voluntarily entering his plea, it postponed the plea hearing for two weeks.  (*Id.*, PageID.381.)

On October 9, 2015, the date set for the previously adjourned plea hearing, Petitioner left court before the hearing began, ostensibly to go to the hospital for medical care. (Adjourned Plea Hr'g & Arraignment Tr., ECF No. 11-9, PageID.386-387.)  The court was troubled by Petitioner's absence and sent the probation and parole agent to investigate Petitioner's condition and to determine whether warrants should issue for his failure to appear.  (*Id.*, PageID.387-389.)  After a recess of a few hours, Petitioner was returned to court on bench warrants in both cases.  Petitioner's bond was revoked.  (*Id.*, PageID.391.)

Finally, on October 23, 2015, Petitioner again appeared at plea hearing in an attempt to plead no contest to the same plea terms, with a maximum sentence of a year and a day

in both cases, to run concurrently.  (Plea Hr'g Tr., ECF No. 11-10, PageID.397.)  The court questioned Petitioner about his understanding of all the rights he was waiving and advised him that, by entering the plea, he would give up his right to claim that he was threatened or promised anything not on the record.  Petitioner indicated that he understood.  (*Id.*, PageID.400-405.)  He denied being threatened.  (*Id.*, PageID.406.)  As the basis for the no-contest plea, the court relied upon the search warrant return and the laboratory report establishing the found substance as marijuana.  (*Id.*, PageID.407-408.)  On that record, the court accepted the no-contest plea.  (*Id.*, PageID.410.)  The court then advised Petitioner of his rights on the probation-violation charges, before ultimately accepting his no-contest plea to the probation violation, based on his plea to the new charges.  (*Id.*, PageID.413-418.)

Before the sentencing hearing was held, Petitioner moved to withdraw his no-contest pleas, because he did not believe he had committed the offense of maintaining a drug house.  At a hearing held on November 6, 2015, the court found that the plea-taking procedure was proper and that Petitioner had failed to demonstrate that he was subject to any improper inducement to enter his plea.  Further, the court found that the evidence supported the elements of the offense of maintaining a drug house.  (11/6/15 Hr'g Tr., ECF No. 11-11, PageID.428-430.)

On November 20, 2015, the court made a number of corrections to the presentence report, including changing the maximum sentence on the drug-house conviction from 4 years to 2 years, which is the statutory maximum for the offense, once the second-drug-offense enhancement was dismissed.  (Sentencing Tr., ECF No. 11-12, PageID.437, 440.)  The court sentenced Petitioner to prison terms of 366 days to 2 years on the two new convictions, with at least 30 days of jail credit on each sentence, subject to being increased after confirmation with the jail as to the exact number.  (*Id.*, PageID.443.)  The court also sentenced Petitioner on the probation violation

4

to imprisonment for 366 days to 5 years, with credit for the time he was jailed.  (*Id.*, PageID.446-448.)

After he was sentenced, Petitioner filed another motion to withdraw the plea.  In his motion, Petitioner argued the following:  (1) he had maintained his innocence since before the plea entry; (2) his plea was involuntary because of the ineffective assistance of counsel; and (3) his plea was not understanding with respect to the plea agreement and the number of days to be credited as time served.  In an opinion and order issued on June 2, 2016, the trial court denied the motion to withdraw the plea.  (Op. & Order Den. Mot. to Withdraw Plea, ECF No. 1-1, PageID.74-79; ECF No. 11-13, PageID.511-516.)

Petitioner sought leave to appeal to both the Michigan Court of Appeals, raising the following grounds:  (1) he was deprived of due process due to a radical defect in jurisdiction; (2) he was subjected to an illegal search and seizure, which was used to support his convictions; (3) trial counsel provided ineffective assistance by ignoring or withholding crucial exculpatory evidence and presenting an illusory plea.  The court of appeals denied leave to appeal on November 30, 2016, for lack of merit in the grounds presented.  Petitioner sought reconsideration, which the court of appeals denied on January 9, 2017.  Petitioner then raised the same issues in an application for leave to appeal to the Michigan Supreme Court.  The supreme court denied leave to appeal on September 8, 2017.

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a

person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being

presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Ground I:  Radical Defect in Jurisdiction

In his first ground for habeas relief, Petitioner contends that the trial court lacked jurisdiction over his criminal matter because no preliminary examination was held, because the magistrate or district judge did not make a finding of probable cause after a hearing, because Petitioner did not waive the probable cause hearing in open court, and because the bindover order was not signed until three days after the circuit court had arraigned Petitioner.

The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts.  *Wills v. Egeler*, 532 F. 2d 1058, 1059 (6th Cir. 1976).  It is well-settled that a purported violation of state law does not provide a basis for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.*

Moreover, the Michigan Court of Appeals, in denying Petitioner's application for leave to appeal on the merits, determined that there were no jurisdictional defects.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  Specifically in relation to jurisdictional issues, the Sixth Circuit has stated that "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001).  Accordingly, this Court is bound by the state court's determination that jurisdiction over Petitioner was established.

## IV.     Ground II:  Illegal Search & Seizure

In his second ground for habeas relief, Petitioner argues that probation agents came to his home and searched it without either supervisor approval or reasonable suspicion of criminal activity.  He also complains that the state police drug unit never obtained a search warrant until four hours after the search was completed and the items tabulated.

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Claims about the deprivation of constitutional rights that

occur before the entry of a guilty plea are foreclosed by that plea.  *See United States v. Broce*, 488

U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267.  As the United States Supreme Court has explained,

> a guilty plea represents a break in the chain of events which has preceded it in the
> criminal process. When a criminal defendant has solemnly admitted in open court
> that he is in fact guilty of the offense with which he is charged, he may not thereafter
> raise independent claims relating to the deprivation of constitutional rights that
> occurred prior to the entry of the guilty plea. He may only attack the voluntary and
> intelligent character of the guilty plea by showing that the advice he received from
> counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267.    Consequently, a knowing and voluntary guilty plea waives all

nonjurisdictional defects in the proceedings.  *See Rice v. Olson*, No. 16-1125, 2016 WL 3877866,

at *2 (6th Cir. July 15, 2016) (citing *United States v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir.

2001)).

In Michigan, a plea of *nolo contendere* or no contest has essentially the same effect

on the criminal prosecution as does a plea of guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest
> his factual guilt, any claims or defenses which relate to the issue of factual guilt are
> waived by such a plea.  Claims or defenses that challenge a state's capacity or
> ability to prove defendant's factual guilt become irrelevant upon, and are subsumed
> by, a plea of *nolo contendere*.  Hence, we hold that a plea of *nolo contendere* has
> the same effect upon a defendant's ability to raise an issue on appeal as does a plea
> of guilty.  Only those defenses which challenge the very authority of the state to
> prosecute a defendant may be raised on appeal after entry of a plea of *nolo
> contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted).

Any questions related to the lawfulness of the search and seizure clearly are

antecedent constitutional violations waived by a valid guilty plea.  Because the claim was waived,

Petitioner is not entitled to relief on his second habeas ground.

In addition, even if his claim were not waived by his guilty plea, Petitioner's second

habeas ground is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also Queen*

*v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell*

bars Fourth Amendment claims). In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard. First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982). Conse-

quently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

For both reasons, Petitioner is not entitled to habeas relief on his challenge to the legality of the search of his home and the seizure of items from that home.

### V.    Ground III:  Ineffective Assistance of Counsel

In his third ground for relief, Petitioner complains that his defense attorney rendered ineffective assistance of counsel.  Petitioner first argues that counsel withheld exculpatory evidence from the court, presumably referring to his claim that he possessed a Michigan medical marijuana card at the time of the offense.  Second, Petitioner contends that counsel failed to tell Plaintiff that the search warrant was defective.  Third, he argues that counsel did not file a motion to suppress the fruit of the search and did not seek an evidentiary hearing.  Fourth, Petitioner complains that, despite telling Petitioner, in the presence of a witness, that the prosecutor could not convict him of running a drug house, defense counsel encouraged Petitioner to take the plea deal.  Fifth, Petitioner complains that the plea bargain was illusory and that counsel lied to him.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see*

*also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

As earlier discussed, claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea.  *See Broce*, 488 U.S. at 569; *Tollett*, 411 U.S. at 267.  A knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea.  *See Stiger*, 20 F. App'x at 308–09.  Petitioner's first four claims of ineffective assistance do not attack the voluntary or intelligent nature of Petitioner's plea, but instead relate to earlier alleged constitutional deprivations, such as counsel's failure to file a motion

to suppress, or to present evidence to the court.  Petitioner's claims therefore have been waived by his subsequent plea.  *See Stiger*, 20 F. App'x at 308-09; *see also United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived by a valid plea).

In his fifth claim of ineffective assistance of counsel, Petitioner argues that counsel was ineffective when he failed to challenge the illusory nature of the plea agreement.  He therefore contends that the plea was involuntary.

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).   Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt.

In order to find a constitutionally valid guilty plea, several requirements must be met.  The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941).  The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.   *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").  The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is

13

waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).  Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).  The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).  Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.  In addition, if a prosecutor's promise is illusory, then a plea is involuntary and unknowing. *United States v. Randolph*, 230 F.3d 243, 250-51 (6th Cir. 2000).  However, where a defendant is "fully aware of the likely consequences" of a plea, it is not unfair to expect him to live with those consequences. *Mabry v. Johnson*, 467 U.S. 504, 511 (1984); *see also McAdoo v. Elo*, 365 F.3d 487, 498 (6th Cir. 2004) (where a defendant receives the "bargained for benefit" the plea is not illusory, and he is not entitled to habeas relief).

Here, the plea agreement was far from illusory.  The trial court summarized the sentencing agreement, and Petitioner agreed that he understood the terms of the agreement:

> THE COURT:  Now, according to the attorneys, you've struck a deal in your case, Mr. Martin.  And the deal is that you will plead no contest to the count two charge of maintaining a drug house, which is punishable by up to two year[s'] incarceration and/or up to a $25,000.00 fine.  It could also include a license sanction.
>
> Also, part of the deal is that you agree to plead no contest to the count three of possession of marijuana as a second offense.  That's punishable by up to two

year[s'] incarceration and/or up to a $4,000.00 fine.  It could also include a license sanction.

You've also agreed that you[r] no contest pleas to counts two and three, in the Felony Information, would suffice and meet the obligation to prove that you violated your probation.  And more importantly, the Prosecutor, his side of the bargain, as agreed in exchange for the no contest plea, that your sentence will be one year and one day on the minimum to -- and was it to two years, here, and the new case charge.  And then, in the old case, what was the max there? Was it two or four? Let's see -- it was five.  Was it a five year?

AGENT DICKSON: Yes, Your Honor.

MR. SAMUELS: Yes.

THE COURT: All right. So, then the deal would shake out for the new charges, what the Prosecutor's agreed to would mean that you[r] sentence would be one year and one day to two years for the new case.  And for that old case that has the probation violation, the end result would be one year and one day to five years as the sentence.

And finally, in exchange for your no contest pleas, and in addition to that sentence agreement, the Prosecutor would agree to dismiss count one from the Felony Information and also the habitual offender third offense notice.  Mr. Martin, is that you[r] understanding of the deal?

THE DEFENDANT: Yeah.

(Plea Hr'g Tr., ECF No. 11-10, PageID.404-405.)  In addition, at an earlier stage of the proceeding, the court advised Petitioner that, had he not reached a plea agreement to eliminate the third-offense felony information, Petitioner could have faced a significantly longer sentence on all of his charges.  (*Id.*, PageID.399.)  In other words, as the result of his plea deal, Petitioner avoided pleading guilty to one of the charged offenses, avoided the second-offense enhancement on the drug-house charge, and avoided having his sentence enhanced by the third-felony offender notice.  *See* Mich. Comp. Laws § 769.11(1)(a) (potentially doubling Petitioner's sentences).  His plea therefore was not illusory.

In addition, as the trial court detailed in its opinion and order denying the posttrial motion to deny the plea, "[t]he Court took painstaking measures to accommodate [Petitioner's]

15

reticence about entering a no[-]contest plea." (Op. & Order Den. Mot. to Withdraw Plea, ECF No. 11-13, PageID.514.)  Upon review of the record, I agree with the state courts that the trial judge exercised great care in ensuring that Petitioner's no-contest pleas to the 2015 charges and the probation-violation charge were knowingly, understandingly, and voluntarily entered. (Plea Tr., ECF No. 11-10, PageID.397-411, 413-418.)

Finally, Petitioner specifically stated on the record under oath that he was satisfied with the advice and service he had received from his attorney. (*Id.*, PageID.410.)  Under settled Sixth Circuit authority, Petitioner's responses to the trial judge, given under oath at the plea hearing, preclude Petitioner's present argument that trial counsel was ineffective. *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986).

For all of these reasons, Petitioner's claims of ineffective assistance of counsel are either waived or meritless.  The state courts' denials of his third habeas ground therefore constitute entirely reasonable applications of clearly established Supreme Court precedent.

### <u>Certificate of Appealability</u>

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to

16

warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's denial of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Dated:    September 27, 2018                    /s/ Ellen S. Carmody
                                               Ellen S. Carmody
                                               United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).